UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLEN L. WISDOM, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TERRY MICHAELSON, an individual; JANET C. MALLO, an individual; KAREN MCMURTRIE, an individual; WILLIAM F. YOST III, an individual; and HAMILTON, MICHAELSON & HILTY, LLP, an Idaho Limited Liability Partnership,<br><br>Defendants. | Case No. 1:10-cv-002-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Following an adverse judgment in state court, Allen Wisdom ("Wisdom"),

proceeding *pro se*, instituted the present action alleging various constitutional violations

associated with the state court proceedings and raising several claims that were previously

raised, and ruled upon, in the state court. The state court proceedings revolved around the

validity of Wisdom's mother's will and the probate of her estate. Wisdom filed an

objection to the admission of his mother's will to probate and a tort action against

William Yost III (the attorney that drafted Wisdom's mother's will), Janet Mallo

(Wisdom's cousin and personal representative of the estate under Wisdom's mother's

will), and Karen McMurtrie (also Wisdom's cousin, and alternative representative of the

estate under the will).[1]  Ultimately, Wisdom's claims in state court were unsuccessful–Wisdom's mother's will was admitted to probate; Janet Mallo was appointed representative of the estate; and judgment was entered in favor of the defendants on all but one of Wisdom's tort claims, which was dismissed without prejudice for lack of standing.

Wisdom filed this suit on the heals of the state court's final judgment, naming the same individual defendants involved in the state court proceedings and adding the attorney and law firm that represented the defendants in state court, Terry Michaelson and Hamilton, Michaelson & Hilty, LLP.  Defendants have moved the Court for summary judgment, (Dkt. Nos. 13 and 14), and those motions are pending before the Court and ripe for adjudication.

Having fully reviewed the record,[2] and for the reasons set forth in more detail below, the Court finds: (1) subject matter jurisdiction does not exist to entertain Wisdom's due process and equal protection claims under 42 U.S.C. § 1983, which directly attack the earlier state court proceedings and, if successful, would have the effect of undermining the state court judgment; and (2) Defendants are entitled to judgment as a matter of law on Wisdom's remaining federal claims.  Having disposed of the federal

---

[1] Allied Mutual Insurance Company was also a named defendant in the state court tort action.

[2] The Court finds that the facts and legal arguments are adequately represented in the briefs and record.  Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, Defendants' motions shall be decided on the record before the Court without oral argument. See Dist. Idaho Loc. Civ. R. 7.1(d).

**MEMORANDUM DECISION AND ORDER - 2**

claims giving rise to this Court's original jurisdiction, pursuant to 28 U.S.C. § 1367(c)(a)(3), the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, Wisdom's constitutional claims associated with the state proceedings will be dismissed for lack of subject matter jurisdiction; summary judgment will issue in favor of Defendants on Wisdom's claims under 42 U.S.C. §§ 1981, 1985, and 1986; and, the remaining state law claims will be dismissed without prejudice.

## FACTS AND PROCEDURAL HISTORY

Wisdom's mother Lessie Steil died on July 17, 2008. The day after his mother's death, Wisdom spoke with his cousin Karen McMurtrie concerning the location of his mother's personal property. (Allen L. Wisdom Affidavit at ¶ 6, Dkt. 30-3.) During the conversation, Wisdom learned that his mother had executed two powers of attorney in favor of his cousins, Karen McMurtrie and Janet Mallo, and that Wisdom's mother's personal property had been disposed of pursuant to those powers of attorney. *Id*. at ¶¶ 6-7. Wisdom later received copies of these powers of attorney: a general power of attorney executed by Ms. Steil in favor of Janet Mallo on September 14, 2004; and a durable power of attorney for health care executed on January 4, 2005. *Id*. at ¶ 51. This conversation between Wisdom and his cousin set in motion a series of emotionally charged events, including litigation in the magistrate and trial divisions of the Third Judicial District of the State of Idaho, in and for the County of Canyon, the Idaho Court of Appeals, and the Idaho Supreme Court. The events ultimately culminated in the present action, in which Wisdom challenges the professional conduct of multiple

attorneys and alleges that a far reaching conspiracy existed between the defendants in this action and the Idaho state court system.

Prior to her death, Ms. Steil executed three wills.  All the wills were drafted and notarized by her attorney, William Yost III ("Yost").  The most recent will, executed on September 20, 2005, revoked all previous wills and codicils; listed Allen Wisdom as her only living child; nominated Janet Mallo ("Mallo") Personal Representative of the will and Karen McMurtrie ("McMurtrie") as alternative personal representative; and granted the Personal Representative "full power to manage and settle [the] estate . . . including the power to sell . . . any and all property of [the] estate. . . ." (Wisdom Aff., Ex. B, Dkt. 30-4 at 7.)  The will also made specific bequests, including $5,000.00 to Ms. Steil's son, Wisdom, thirty percent of the estate to her niece Karen McMurtrie, and forty-five percent of the estate to her niece Janet Mallo. The will was witnessed by two individuals and notarized by Yost.  The total net value of the estate has been calculated at $330,078.40. (Dkt. 30-14.)

## 1.    State Court Proceedings

On August 15, 2008, Mallo, in her capacity as personal representative of Lessie Steil's estate, filed a Petition for Formal Probate of Will and Formal Appointment of Personal Representative. (Terry Michaelson Affidavit, Ex. A, Dkt. 13-2 at 7.)  At the time the petition was filed, Mallo was represented by Yost.  Wisdom, proceeding *pro se*, filed an objection to the petition for probate, challenging the validity of the will and requesting the appointment of a disinterested personal representative. (Michaelson Aff., Ex. B, Dkt.

13-2 at 12.)  In his objection, Wisdom alleged that Mallo and her sister, McMurtrie,

exerted undue influence to secure control of his mother's assets and that his mother was

incompetent at the time she executed the will. *Id.*  Wisdom's objection also stated that he

intended to file a tort action against Mallo, McMurtrie, and Yost for tortious interference

"in the obtaining, preparation and submission of the fraudulent Will . . . and their efforts

to essentially disinherit [Wisdom] from his Mother's estate." (Dkt. 13-2 at 14.)  Finally,

the objection sought the appointment of an independent personal representative "to take

control of all Estate assets . . . [and] to locate and retrieve the disappeared assets for the

benefit of the Estate." (*Id.*, Dkt. 13-2 at 15.)

Due to the allegations contained in Wisdom's objection, Yost withdrew as counsel

for the estate and stipulated with attorney Terry Michaelson ("Michaelson") for

Michaelson to take over representation of Mallo in the probate proceedings. (Michaelson

Aff., Ex. C, Dkt. 13-2 at 19.)

While the probate case was pending in the magistrate division in state district

court, Wisdom filed a separate tort action in the state district court naming Mallo,

McMurtrie, Yost, and Allied Mutual Insurance Company as defendants. *Wisdom v. Mallo*,

Case No. CV-08-11900 (Idaho Dist. Ct. 2008).  Wisdom alleged that the defendants were

liable for civil conspiracy, breach of fiduciary duty, tortious interference with economic

expectancy, undue influence, and fraud. *Id.*  Wisdom also alleged that Yost had

committed legal malpractice and asserted an additional claim against Yost and his surety,

Allied Mutual Insurance Company, for breach of the Idaho Notary Public Act. *Id.*

In the meantime, the probate case moved forward in the magistrate division of the district court. On September 30, 2008, Wisdom received an Amended Notice of Hearing, setting a bench trial in the probate proceeding for December 2, 2008. (Dkt. 30-5.) The notice also set a pretrial conference on October 28, 2008. The magistrate judge issued an Order Fixing Time and Place of Hearing in accordance with the notice. Wisdom appeared at the pretrial conference on October 28, 2008, and informed the court that he would not be prepared to proceed with trial on December 2. Notwithstanding his receipt of the Amended Notice of Hearing, Wisdom claimed (and continues to claim) that the order setting the above dates was issued upon *ex parte* contact between the magistrate judge and either Michaelson or members of his law firm. The court refused Wisdom's request to change the trial date.

On October 6, 2008, Michaelson (on behalf of Mallo) served discovery requests on Wisdom relating to the probate action. Under Rule 33(a)(2) of the Idaho Rules of Civil Procedure, Wisdom had thirty days to respond to the interrogatories. Wisdom did not respond to the discovery requests but, on November 10, 2008, he served a motion for a protective order on Michaelson. The motion itself was filed with the court on November 13, 2008. Following Wisdom's failure to respond to the discovery requests, on November 12, 2008, Michaelson filed on behalf of his clients a motion to compel and, given the impending trial date in December, Michaelson also filed a motion to shorten time. An order shortening time was issued the next day and a hearing on the motion to compel was set for November 20, 2008. Wisdom asserts that the order shortening time

was issued upon improper *ex parte* contact between the court and either Michaelson or other persons from Michaelson's law firm.[3]

Wisdom failed to appear at the hearing on the motion to compel. He did, however, file a notice of non appearance. Notwithstanding Wisdom's notice of non appearance, the magistrate judge granted the motion to compel. The court acknowledged that Wisdom had given notice that he would not appear, but found that Wisdom had failed to pay the required filing fee and failed to provide any reasons for the non appearance. The order required Wisdom to "respond fully and completely to the Petitioner's discovery requests," and provided that a failure to do so by 5:00 p.m. on November 26, 2008, would result in the imposition of sanctions. (Michaelson Aff., Ex. E, Dkt. 13-2 at 38.) The order specifically indicated that the possible sanctions for failing to comply with the order included "the entry of an order striking the Objection to Petition for Formal Probate of Will and Appointment of Personal Representative . . . and the granting of all relief sought in the petition . . . including admission of the decedent's Last Will and Testament to probate and appointment of Petitioner Janet Mallo as personal representative of the estate of the decedent." *Id.*

---

[3] Wisdom repeatedly suggests but presents no evidence that Michaelson's contact with the state court concerning scheduling matters was improper *ex parte* contact in violation of Wisdom's right to due process. Although the Court does not specifically address whether the alleged *ex parte* contact in the state court proceedings was improper, it is noted that Wisdom's argument fails to distinguish between contact with the court concerning routine procedural matters and impermissible *ex parte* contact in which an attorney advocates the merits of his or her position outside the presence of the opposing party with the aim of influencing the judge. See *McKenzie v. McCormick*, 27 F.3d 1415, 1419-1420 (9th Cir. 1994); see also, ABA Model Code of Judicial Conduct, Canon 3B(7) ("A judge shall not initiate, permit, or consider ex parte communications . . . except . . . ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits . . . .").

Wisdom filed a motion for reconsideration of the order compelling discovery, again asserting that the order was issued upon improper *ex parte* contact. (Wisdom Aff., Ex. K, Dkt. 30-6 at 10.) A hearing was held on December 2, 2008, during which, Wisdom states, "the magistrate judge refused to address any issue other than whether I had responded to the discovery." (Wisdom Aff., ¶ 24, Dkt. 30-3.) Wisdom had not responded to discovery. As a result of Wisdom's failure to comply with the court's order compelling discovery, on December 3, 2008, the magistrate judge struck Wisdom's objection to the probate of his mother's estate and entered an Order Admitting Will to Probate and Appointing Personal Representative. (Michaelson Aff., Ex. F, Dkt. 13-2 at 42.)

Wisdom timely appealed the magistrate judge's order in the probate case to the district court. Pursuant to Rule 83 of the Idaho Rules of Civil Procedure, the district court ordered that the appeal from the magistrate's division be heard as a trial de novo.[4] (Wisdom Aff., Ex. M, Dkt. 30-7 at 20.) The district court also ordered, on January 22, 2009, that the probate case and the tort case be consolidated, finding that the "actions involve common questions of law and fact and that all are pending before this Court." (Michaelson Aff., Ex. H, Dkt. 13-2 at 49.)

---

[4] Rule 83(b) of the Idaho Rules of Civil Procedure provides: "All appeals from the magistrate's division shall be heard by the district court as an appellate proceeding. If there is not an adequate record of the proceedings in the magistrate's division, the district court may order a trial de novo . . . ." Rule 83(j)(2) provides: "The district judge assigned the appeal may, on the court's own motion or motion of a party, order an alternative method of hearing the appeal by ordering . . . [t]hat the appeal shall be heard as a trial de novo because there is not an adequate record of the proceedings in the magistrate's division." Idaho R. Civ. P. 83(j)(2)(C).

As indicated above, Wisdom filed the tort action on November 13, 2008. Prior to consolidation of the two cases, Wisdom moved for default against the defendants in the tort case for failing to timely file responsive pleadings.[5] On December 15, 2008, Mallo, McMurtrie, and Yost filed motions to dismiss or, alternatively, motions for summary judgment. Oral argument was heard on the motions on January 15, 2009. During arguments, the district court informed the parties that it intended to conduct the probate appeal as a trial de novo and to consolidate the tort and probate cases.

On February 3, 2009, the district court issued a Memorandum Decision Upon Motion for Summary Judgment filed by Defendants Mallo, McMurtrie & Yost.[6] (Michaelson Aff., Ex. I, Dkt. 13-2 at 52.) In its decision, the district court granted summary judgment in favor of the defendants on Wisdom's tort claims for undue influence and fraud, determining that these claims were duplicative of Wisdom's claims in the probate case. *Id.* The court also granted summary judgment on Wisdom's civil conspiracy and tortious interference with economic expectation claims, holding that no such causes of action existed under Idaho law. *Id.* Yost was granted summary judgment on Wisdom's legal malpractice and breach of fiduciary duty claims on the ground that Yost did not owe Wisdom a fiduciary duty. The court also dismissed Wisdom's claim under the Idaho Notary Public Act for failing to plead fraud with particularity.

---

[5] Michaelson filed notices of appearance on behalf of Mallo and McMurtrie on November 18, 2008, and for Yost and Allied Mutual Insurance Company on November 24, 2008. Allied Mutual Insurance Company filed a motion to dismiss on December 4, 2008.

[6] The district court granted Allied Mutual's motion to dismiss on the same day.

Concerning Wisdom's breach of fiduciary duty claim against Mallo and McMurtrie, the court held that, to the extent Wisdom's claim dealt with transactions that took place after the appointment of the personal representative, the claim would be heard in connection with the probate action. *Id.* The court therefore granted summary judgment in favor of defendants on Wisdom's tort claim against Mallo and McMurtrie relating to transactions that occurred post-appointment. The court concluded, however, that, to the extent Wisdom was making claims regarding sales of Wisdom's mother's property or other transactions Mallo and McMurtrie had conducted under a power of attorney while the decedent was still living, Wisdom would be allowed to raise his allegations under § 15-12-116 of the Idaho Code. This statute allows a person to petition a court to review an agent's conduct under a power of attorney.

In sum, the state district court dismissed all tort claims alleged by Wisdom against Yost and Allied Mutual Insurance Company and granted summary judgment dismissal of all claims asserted by Wisdom against Mallo and McMurtrie except for the breach of fiduciary duty claim related to actions taken prior to Ms. Steil's death. At the end of its decision, the district court summarized the status of the case, noting that during the contested testacy proceedings, the proponents of the will, Mallo and McMurtrie, would have the burden of establishing prima facie proof of due execution of the will and that Wisdom would bear the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. *Id.* The court also noted that Wisdom's breach of fiduciary duty claim relating to Mallo and McMurtrie's conduct in

exercising their power of attorney for Wisdom's mother while she was still living remained to be litigated at trial. *Id.*

Following the above orders, Wisdom filed six motions in the state district court, including: (1) an objection to alleged *ex parte* contact; (2) a motion for reconsideration of the order referring the case to mediation; (3) a motion for reconsideration of the decision granting summary judgment; (4) a motion for reconsideration of the order granting dismissal in favor of Allied Mutual; (5) an application for entry of default; and (6) a petition for appointment of special administrator.

In an interim order, the district court denied oral argument on the motions, indicated that written decisions on the motions would be forthcoming, and set a status hearing for March 19, 2009. (Wisdom Aff., Ex. T, Dkt. 30-14 at 11.) At the status hearing, the court set a trial for May 19, 2009, and ordered the parties to respond to all previously served discovery requests within thirty days. Following the status hearing, the court issued a scheduling order setting the consolidated cases for a three day trial beginning May 19, 2009, and noting that the issue of whether the trial would be before the court or before a jury would be decided following the submission of further briefing by the parties. (Michaelson Aff., Ex. L, Dkt. 13-2 at 67.) Wisdom was ordered to provide the court with legal analysis supporting his request for a jury trial by April 2, 2009. *Id.*

The scheduling order also required the standard trial submissions, including: witness lists and exhibits; a concise written statement of each party's theory of the case and supporting legal authorities; and proposed jury instructions and verdict forms, if

applicable. Wisdom did not file any of the documents required by the scheduling order. He did, however, file an objection to Yost's request for fees and costs, and filed motions to vacate the scheduling order, continue the trial, and compel discovery. With the exception of Wisdom's motion for entry of default, which was not ruled upon, the district court denied all of his motions.

The consolidated cases proceeded to trial on May 19, 2009. Wisdom continued to maintain that he was not prepared for trial, and he did not proffer any evidence to support his claims. He did, however, cross-examine some of the defendants' witnesses and make some objections. Following trial, the court issued two orders: the first dismissed Wisdom's remaining tort claim for lack of standing,[7] (Michaelson Aff., Ex. N, Dkt. 13-2 at 74); and the second admitted Wisdom's mother's will to probate and appointed Mallo as personal representative of the estate, (*id.*, Ex. O, Dkt. 13-2 at 78.)

Wisdom filed a notice of appeal on June 19, 2009. On appeal, Wisdom argued that the district court erred by not granting his requests for entry of default, and by granting partial summary judgment to Mallo and McMurtrie, "transferring" tort causes of action to the probate case "and later causing the transferred causes of action to disappear," refusing to order Mallo and McMurtrie to file an answer, granting summary judgment to Yost,

---

[7] The court's holding on this issue rested on § 15-12-116 of the Idaho Code, which allows a person to petition a court to review an agent's conduct under a power of attorney. The court held that, because the estate possessed adequate funds to cover what Wisdom was entitled to under his mother's will, he was "without standing to challenge the handling of the financial affairs of [the decedent] by Defendants JANET C. MALLO and/or KAREN MCMURTRIE pursuant to powers of attorney executed by Ms. Steil." (Michaelson Aff., Ex. N, Dkt. 13-2 at 75.) The court therefore dismissed Wisdom's only remaining tort claim without prejudice. *Id.*

dismissing Allied Mutual, denying Wisdom the opportunity to participate in scheduling, conducting a bench trial instead of a jury trial, denying Wisdom the opportunity to conduct discovery, declining to continue the trial, refusing to hear Wisdom's motion for the appointment of a special administrator, allowing irregularities at trial, admitting Wisdom's mother's will to probate, appointing a conflicted personal representative, and awarding attorney fees to the defendants. *Wisdom v Mallo*, 2010 Unpublished Opinion No. 667 (Idaho Ct. App. Oct. 14, 2010); (Second Aff. of Michaelson, Ex. A, Dkt. 39). Wisdom also argued that the above alleged errors violated his constitutional right to due process.

In a twenty-one page opinion issued October 14, 2010, the Idaho Court of Appeals affirmed the decision of the district court, holding that the district court did not err in granting judgment in favor of the defendants and that any procedural errors or irregularities that occurred during the messy proceedings below were not prejudicial. The court of appeals also specifically held that Wisdom had not demonstrated any violation of due process. *Id.* at 20 ("As this Court has already determined that Wisdom's claims of error are without merit, no due process violation is shown.").

## 2. Proceedings in this Court

Wisdom brought suit in this Court on January 4, 2010, naming Terry Michaelson, Janet Mallo, Karen McMurtrie, William Yost III, and Hamilton Michaelson & Hilty, LLP as defendants. Wisdom's Complaint raises seven claims: (1) civil conspiracy; (2) violations of civil rights under 42 U.S.C. §§ 1981, 1983, 1985 and 1986; (3) abuse of

process; (4) breach of fiduciary duty; (5) tortious interference with economic expectancy;

(6) fraud; and (7) violations of the Idaho Racketeering Act, Idaho Code § 18-7801.  The

gist of Wisdom's complaint is that, beginning in approximately 2004, defendants Mallo,

McMurtrie, and Yost hatched a scheme to misappropriate the assets of Wisdom's mother

while she was still living and to deprive Wisdom of his inheritance once Ms. Steil passed

away.  The complaint further alleges that defendant Michaelson joined the conspiracy in

2008 when he took over legal representation of Mallo, McMurtrie, and Yost in the

probate and tort actions in the Idaho state court system.  Finally, Wisdom alleges that the

Defendants' conspiracy was aided and abetted by the Idaho state court system, and

specifically, by the state court judges that ruled against Wisdom in the probate and tort

actions, all of whom Wisdom alleges acted with a common interest to deny Wisdom

access to the Idaho judicial system. (Pl.'s Compl. at 6, Dkt. 1.)

Wisdom has not named the state court judges as defendants, repeatedly referring to

them as "agents and employees" of the State of Idaho "who enjoy absolute immunity

from civil liability." *Id*.  Wisdom claims that the actions taken in the course of the alleged

conspiracy resulted in the deprivation of his constitutionally protected civil rights. *Id*., ¶

38 ("Defendants and each of them, aided and abetted by the State of Idaho, its agents and

employees, who enjoy absolute immunity from civil liability, under the color of state law,

were willful participants in joint activity with the State and its agents and employees,

willfully with intent, to deny Plaintiff his Fourteenth Amendment rights, privileges or

immunities, to procedural and substantive due process and equal protection causing injury

to Plaintiff in his liberty and property, in violation of Plaintiff's Civil Rights pursuant to 42 U.S.C. § 1983.").

On April 2, 2010, Defendants filed two motions for summary judgment: the first from Defendants Michaelson and Hamilton, Michaelson & Hilty, LLP (Dkt. 13); and the second from Defendants Mallo, McMurtrie, and Yost (Dkt. 14). The motions are nearly identical with the exception that the motion filed by Michaelson asserts the additional defense that, as an attorney, he is a quasi judicial actor and therefore immune from liability under § 1983. (Mem. In Supp. Of Sum. Jud., at 14, Dkt. 13-1.) Both motions argue that Wisdom's claims are barred by principles of *res judicata* and the *Rooker-Feldman* doctrine. Further, the motions argue that the civil rights claims should fail because Wisdom has not (and cannot) set forth a prima facie case, including the requirement that Wisdom demonstrate state action or show that he is a member of a protected class.

In response to Defendants' motions for summary judgment, Wisdom filed a motion for continuance under Federal Rule of Civil Procedure 56(f),[8] (Dkt. 18), and a motion to compel discovery, (Dkt. 19). Defendants opposed the Rule 56(f) motion, arguing, *inter alia*, that "no amount of discovery will shed additional light upon the defense that the Plaintiff's claims are barred by the doctrine of res judicata," and that "the Motions for

---

[8] Prior to the 2010 amendments to the Federal Rules of Civil Procedure, which became effective on December 1, 2010, Rule 56(f) provided that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Fed. R. Civ. P. 56(f)(2).

Summary Judgment involve purely questions of law based upon undisputed facts." (Dkt. 22 at 3.) The Court issued an order finding "that much of Plaintiff's requested discovery is unnecessary to resolve the motions for summary judgment." (Dkt. 26 at 5.) Specifically, the Court found that disposition of Wisdom's causes of action for civil conspiracy, breach of fiduciary duty, tortious interference with economic expectancy, and fraud, which Defendants argue are barred by the doctrine of *res judicata*, "will depend entirely on an examination of the pleadings in the current matter and the decisions issued in any prior actions." *Id.* at 6. However, taking into consideration Wisdom's *pro se* status, the Court identified the areas where discovery would be permitted upon the submission by Wisdom of a revised Rule 56(f) affidavit. *Id.* at 5. Specifically, the Court ordered Wisdom to identify evidence that he believed to be in the possession of the Defendants relating to (1) the state actor requirement under § 1983, (2) the abuse of process claim, and (3) the fraud allegations related to the Idaho Racketeering Act claims. *Id.* at 12.

After evaluating Wisdom's revised Rule 56(f) affidavit,[9] (Dkt. 28), the Court found that Wisdom had not identified specific information that would preclude summary judgment on his abuse of process claim sufficient to warrant an order compelling discovery on that issue prior to the Court's consideration of Defendants' motions for

---

[9] Wisdom's revised affidavit was filed on July 12, 2010. On July 13, 2010, the Court issued an order denying Wisdom's Rule 56(f) motion on the ground that Wisdom had not filed a revised affidavit. (Dkt. 27.) Wisdom thereafter filed a motion for reconsideration, (Dkt. 27), which the Court granted in part and vacated the previous order denying relief under Rule 56(f). (Dkt. 32.)

summary judgment. (Dkt. 32 at 7-8.)  The Court did, however, order Defendants to respond to certain interrogatories related to Wisdom's § 1983 claim,[10] and further ordered Defendant Mallo to answer certain interrogatories related to Wisdom's Idaho Racketeering Act claim.[11]  After receiving responses to the discovery compelled by the Court, Wisdom filed a supplemental response to Defendants' motions for summary judgment. (Dkt. 37.)

Wisdom's supplemental response to Defendants' motions for summary judgment addresses, among other things, the state action requirement related to the alleged constitutional violations.  Wisdom argues that state action exists in this case because the Defendants allegedly acted in concert with the state court judges in an effort to deprive Wisdom of his constitutional rights.  In support of his conspiracy allegation, Wisdom asserts that Defendants Michaelson and Yost had pre-existing relationships with the state court judges involved with the state court probate and tort proceedings.  Wisdom further argues that the purported *ex parte* contacts between the lawyers (or other persons from Michaelson's law firm such as office staff) and the court evidence the existence of a conspiracy.

---

[10]  These interrogatories addressed Defendants Michaelson's and Yost's relationships and purported *ex parte* communications with the two judges presiding in the state court actions.  The Court found these interrogatories relevant to the state action element of Wisdom's § 1983 claim. (Dkt. 32 at 5.)

[11]  The discovery identified related to the Racketeering claim concerning actions taken by Defendant Mallo both before and after Wisdom's mother's death, including invoices for services rendered from attorneys or accountants after the death of the decedent, the disposition of the decedent's personal property, and information related to the decedent's insurance policy.

As to the relationship with the judges, Defendants' discovery responses indicate that their relationships with the state court judges are professional in nature, and Wisdom has not presented any facts to indicate otherwise. Furthermore, the purported *ex parte* contacts that Wisdom argues demonstrate the existence of a conspiracy relate to the instances in which the attorneys, staff, or members of their law firms, contacted the court to set hearings. Based on these facts, Wisdom argues that "[i]t is abundantly clear that bias and favoritism which favored Defendant Michaelson and his clients, resulted in the deprivation of Plaintiff's due process and equal protection guarantees, was pervasive in the state court actions," and "[t]his conduct amounts to classic cronyism that involved intent to discriminate." (Pl.'s Supp. Resp. at 16, Dkt. 37.)

## DISCUSSION

### 1.    Subject Matter Jurisdiction

Federal district courts are courts of original jurisdiction.[12] As such, they may not serve as appellate tribunals to review errors allegedly committed by state courts. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions.").[13] This principle forms the basis for what has become known as the *Rooker-*

---

[12]  Title 28 of the United States Code provides that the district courts shall have original jurisdiction over federal questions (28 U.S.C. § 1331), diversity actions (28 U.S.C. § 1332), and admiralty cases (28 U.S.C. § 1333).

[13]  This rule is subject to limited statutory exceptions. For instance, under 28 U.S.C. § 2254, a federal district court has original jurisdiction to entertain petitions for habeas corpus brought by state prisoners who claim that the state court has made an error of federal law.

*Feldman* doctrine, which takes its name from two decisions issued by the United States Supreme Court: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). For the purposes of the *Rooker-Feldman* doctrine, state court judgments are final even if the case remains pending on appeal in the state court system. *Worldwide Curch of God v. McNair*, 805 F.2d 888, 893 n. 3 (9th Cir. 1986). As stated by the United States Supreme Court, "*Rooker-Feldman* bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violated the loser's federal rights." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 287 (2005) (internal citations and quotations omitted).

Would-be federal plaintiffs may not avoid this rule by cloaking their challenge in constitutional terms under 42 U.S.C. § 1983; "[t]his rule applies even though . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." *Feldman*, 460 U.S. at 485. The United States Court of Appeals for the Ninth Circuit refers to this type of case–one in which a plaintiff attacks a state court judgment without expressly asking the federal court to overturn the state court judgment–as a "forbidden de facto appeal." *Noel*, 341 F.3d at 1158 ("A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial

decision of a state court must refuse to hear the forbidden appeal."); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) ("*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."); *Allah v. Sup. Ct.*, 871 F.2d 887, 891 (9th Cir. 1989) (noting that the plaintiff alleged that the state court violated his federally protected equal protection and due process rights by dismissing his case on "procedural technicalities," and holding: "[t]o the extent that Allah requested the district court to conduct a direct review of the state court's judgment and to scrutinize the state court's application of various rules and procedures pertaining to his case, the district court lacked subject matter jurisdiction over his complaint").

The *Rooker-Feldman* doctrine has narrow application and must be distinguished both from principles of abstention and *res judicata*. See *Exxon Mobil Corp.*, 544 U.S. at 283 (critical of the Second Circuit's opinion in *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996), for conflating *Rooker-Feldman* with preclusion law). For instance, if a federal plaintiff and an adverse party are simultaneously litigating the same or a similar dispute in state court, the federal suit may proceed under the long-standing rule permitting parallel state and federal litigation, although the federal court may stay the federal proceedings pending the conclusion of the state proceedings under certain circumstances pursuant to the abstention doctrine. See *Noel*, 341 F.3d at 1163. Likewise, if the federal plaintiff and the adverse party have already litigated the state court suit to judgment, the federal plaintiff may be precluded from relitigating the dispute

under principles of *res judicata*, but the federal district court may still have subject matter jurisdiction if the federal suit does not allege injury from the state court judgment itself. See *id*. at 1164.

In *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280 (2005), the United States Supreme Court clarified the limited scope of the *Rooker-Feldman* doctrine, stating that the doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. In other words, for *Rooker-Feldman* to apply, the following three factors must be present: first, the federal plaintiff must have lost in state court; second, the state court judgment must have issued prior to the commencement of the federal action; and third, the federal plaintiff must be claiming that he or she was injured by the state court judgment and seek review and rejection of that judgment.

Having closely reviewed Wisdom's complaint, the Court finds that, as to Wisdom's due process and equal protection claims, all three factors set forth by the Supreme Court in *Exxon Mobil* are satisfied. First, Wisdom unquestionably lost in state court; his objection to the probate proceedings was stricken and his tort claims were either dismissed or disposed of through summary judgment in favor of the Defendants. Second, the state court orders dismissing Wisdom's tort claims and admitting Wisdom's mother's will to probate were entered on May 26, 2009, prior to the commencement of this action on January 4, 2010. The only remaining question is whether Wisdom alleges that he was

injured by the state court judgment and seeks review of that allegedly injurious judgment. For the reasons discussed below, the Court answers this question in the affirmative.

Wisdom argues that the *Rooker-Feldman* doctrine is inapplicable because he has not asked this Court to "nullify or overturn any state court 'judgment.'" (Pl.'s Resp. To Def.s' Mot. For Summ. Jud. at 12, Dkt. 31.) As noted above, however, a plaintiff need not expressly ask for the reversal of a state court judgment for a federal claim to be an impermissible de facto appeal. Wisdom's complaint alleges that the "order striking Plaintiff's Objection to the admitting of the Last Will and Testament[,] admitting the Last Will and Testament[,] and appointing Defendant Mallo as the Personal Representative . . . violated Plaintiff's substantive and procedural due process rights, equal protection rights and was done to cover up criminal conduct of Defendants and each of them." (Pl.'s Compl., ¶ 46, Dkt. 1.) Wisdom's complaint further alleges:

> 53. Thereafter, the state district court judge, who enjoys absolute immunity from civil liability, embarked upon a pattern of conduct which was abusive, coercive, threatening and in violation of Plaintiff's constitutional rights to substantive and procedural due process, equal protection under the law . . . essentially repealing the rules of civil procedure; refusing to acknowledge that a legitimate legal disagreement existed. . . .

> 54. The pattern of conduct on the part of the immune state district court judge continued when, on February 3, 2009, the district judge granted a motion to dismiss to Defendant Yost III's surety and granted summary judgment to Defendant Yost III. . . . This conduct, under the color of state law, and done to favor defendants and each of them and to prejudice Plaintiff, violated Plaintiff's substantive and procedural due process and rights to equal protection under the law.

55. Also on February 3, 2009 the immune state court judge, by order, took the unusual, perhaps unprecedented action, of transferring Plaintiff's legitimate causes of action in the tort action to the probate action, with the exception of one cause of action which remained in the tort action, and in so doing, granted summary judgment to the transferred tort causes of action . . . . This conduct, under the color of state law, and done to favor defendants and each of them, and prejudice Plaintiff and his legitimate causes of action, violated Plaintiff's substantive and procedural due process rights and rights to equal protection under the law.

71. On May 19, 2009, . . . [t]he sham trial ended in the afternoon by the immune state court district judge decreeing that several of Plaintiff's causes of action would not be heard or decided; that the Deceased was competent when the purported Last Will and Testament was executed; and that the Last Will and Testament would be admitted to Probate and Defendant Mallo would be appointed as Personal administrator. The action denied Plaintiff his substantive and procedural due process rights and equal protection under the law all under the color of law and designed to assist defendants herein and each of them all to the detriment of Plaintiff.

(Dkt. 1, ¶¶ 53, 54, 55, 71.) Wisdom's complaint is littered with similar allegations.

These allegations make clear that Wisdom is claiming that the state court judgment

caused him injury; he claims the orders violated his constitutional rights and he seeks

redress for the alleged injury under 42 U.S.C. § 1983. Wisdom's complaint also states

that he will move the Court for an order to "divest" the Defendants "of all interest, direct

and indirect" gained from the alleged conspiracy. (*Id*., ¶ 139). For the Court to grant

Wisdom the relief he seeks, the Court necessarily would have to find the state court

orders violated the constitution and, in effect, overturn the state court judgment.

In sum, because the constitutional injury alleged by Wisdom resulted from the judgment itself, *Rooker-Feldman* applies, and the Court lacks subject matter jurisdiction to entertain Wisdom's due process and equal protection claims. See *Bianchi v. Rylaarsdam*, 334 F.3d 895, 901 (9th Cir. 2003) ("'If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction.'") (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)).

2. **Wisdom's Remaining Federal Claims**

In addition to his due process and equal protection claims, Wisdom raises claims under 42 U.S.C. §§ 1981, 1985(2) and (3), and 1986. These claims arguably lie outside the purview of the *Rooker-Feldman* doctrine because they require an inquiry into facts and legal questions unconnected to the state court judgment itself. The Court, therefore, has subject matter jurisdiction to entertain these claims. Defendants move for summary judgment on all of Wisdom's civil rights claims. For the reasons set forth below, summary judgment will be granted in favor of Defendants on Wisdom's remaining civil rights claims.

A. **Legal Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The United States Supreme Court has made clear that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B.     Section 1981

Wisdom's complaint states that "[b]eginning on or about August 15, 2008 and continuing to the present, Defendants and each of them, joined, conspired, or otherwise assisted with and by the State of Idaho, its agents and employees, who enjoy absolute immunity from civil liability, under the color of state law, to intentionally deny Plaintiff his Fourteenth Amendment Constitutional rights to procedural and substantive due process and equal protection . . . in violation of Plaintiff's Civil Rights pursuant to 42 U.S.C. § 1981." (Pl.'s Compl., ¶ 37, Dkt. 1.)  Title 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens."  To support a claim under § 1981, a plaintiff must allege facts indicating that he or she was discriminated against or denied rights "on account of [his or her] race or ethnicity." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008).

Wisdom has not alleged discrimination based on his race or ethnicity.  Therefore, the Court will dismiss Wisdom's claim based on § 1981.

## C.     Section 1985(2)

Title 42 U.S.C. § 1985(2) contains two clauses that give rise to separate causes of action.  The first clause concerns access to *federal* courts.[14]  The second clause, and the one at issue in this case, concerns access to *state or territorial courts*, giving rise to a cause of action where "two or more persons, conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State of Territory, with intent to deny to any citizen the *equal protection of the laws*." 42 U.S.C. § 1985(2) (emphasis added).

Wisdom's complaint states that "Defendants and each of them, with the aid and assistance of State of Idaho, its agents and employees, conspired for the wrongful purpose of impeding, hindering, obstructing, or defeating the due course of justice in the Idaho State Court with the intent to deny Plaintiff his Fourteenth Amendment rights to procedural and substantive due process and equal protection of the laws." (Pl.'s Compl., ¶ 39, Dkt. 1.)  Wisdom's complaint further alleges that "[t]his conduct was done for the class-based animus or other invidiously discriminatory motives to discourage, prevent, defeat or discriminate against Plaintiff in violation of Plaintiff's Civil Rights pursuant to

---

[14]   The first clause of § 1985(2) gives rise to a cause of action where "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness *in any court of the United States* from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror." 42 U.S.C. § 1985(2) (emphasis added).

42 U.S.C. § 1985(2) and (3)." *Id.*

Defendants move for summary judgment on Wisdom's § 1985(2) claim, arguing that they are entitled to judgment as a matter of law because Wisdom is not a member of a protected class. In response, Wisdom argues that "42 U.S.C. § 1985 (2) does not require the showing that Appellant is a member of a protected class in order to recover damages." (Pl.'s Resp. To Def.s' Mot. For Sum. Jud., at 15, Dkt. 31.) Wisdom cites *Kush v. Rutledge*, 460 U.S. 719 (1983), for the proposition that he need not prove class-based discrimination under the second clause of § 1985(2). However, the case does not stand for the proposition cited. In *Kush*, the United States Supreme Court held that no allegations of class-based discriminatory animus are required to establish a cause of action under the first part of § 1985(2), not the second clause of the section, which is the clause at issue in this case. 460 U.S. at 726.

It is well-settled that the "equal protection" language of the second clause of § 1985(2) requires an allegation of class-based animus for the statement of a claim under that clause. *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). Notwithstanding Wisdom's misplaced assertion that he need not prove class-based discrimination under the second clause of § 1985(2), he also states in his complaint that "Plaintiff is a member of a protected class of persons who are entitled to constitutional rights in litigating a lawsuit in the Idaho State Court." (Pl.'s Compl., ¶ 39, Dkt. 1.) No such class is recognized as a protected class for the purposes of § 1985. A protected class is "[a] class of people who benefit from protection by statute, such as Title VII of the

Civil Rights Act of 1964, which prohibits discrimination based on race, sex, national origin, or religion." Blacks Law Dictionary 242 (7th ed. 1999).  Furthermore, it has been held that classes protected under § 1985(3) include those who are discriminated against on the basis of immutable characteristics, such as race, national origin, and sex. See *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825 (1983).  Because Wisdom has not pled or otherwise established that he is a member of a protected class, Defendants are entitled to summary judgment on his claim under § 1985(2).

> ### D.    Section 1985(3)

A complaint based on § 1985(3) must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. 42 U.S.C. § 1985; *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005).  To prove a violation of § 1985(3), the plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Furthermore, the Ninth Circuit has held that § 1985(3) extends "beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

For the reasons discussed in the previous section, Wisdom has not demonstrated that he is a member of class to which the protections of § 1985(3) apply. Summary judgment will therefore be granted in favor of Defendants on Wisdom's claim under § 1985(3).

### E.    Section 1986

Title 42 U.S.C. § 1986 provides a cause of action against individuals who have knowledge of a conspiracy under § 1985 and fail to prevent or aid in preventing the commission of the conspiracy when they have the power to do so. Under the language of the statute, the plaintiff must demonstrate a valid conspiracy under § 1985 as a prerequisite to stating a claim under § 1986. *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (recognizing that "[a] claim can be stated under § 1986 only if the complaint states a valid claim under § 1985").

Because Wisdom has not stated a valid claim under § 1985, his claim under § 1986 likewise must fail. Summary judgment will be entered in favor of Defendants on Wisdom's claims under § 1986.

### 3.    Supplemental Jurisdiction

Having determined that the Court lacks subject matter jurisdiction to entertain Wisdom's due process and equal protection claims brought pursuant to 42 U.S.C. § 1983, and finding that Defendants are entitled to summary judgment on Wisdom's civil rights claims under 42 U.S.C. §§ 1981, 1985(2) and (3), and 1986, the only remaining claims allege violations of state law. Specifically, Wisdom's remaining claims include civil

conspiracy (First Claim for Relief), abuse of process (Third Claim for Relief), breach of fiduciary duty (Fourth Claim for Relief), tortious interference with economic expectancy (Fifth Claim for Relief), fraud (Sixth Claim for Relief), and violations of the Idaho Racketeering Act (Seventh Claim for Relief). Of these claims, the claims for civil conspiracy, breach of fiduciary duty, tortious interference with economic expectancy, and fraud were raised previously in the state court proceedings against Defendants Mallo, McMurtrie, and Yost.

All of the Defendants (including Defendants Michaelson and Hamilton, Michaelson & Hilty, LLP) argue that they are entitled to summary judgment on these claims under principles of *res judicata*. In response, Wisdom argues, among other things, that he did not have a "full and fair" opportunity to litigate his claims in state court. The Court, however, need not address whether Wisdom's state law claims are barred by *res judicata*. Title 28 U.S.C. § 1367 provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim [arising under state law] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although federal district courts have the discretion to retain supplemental jurisdiction over state law claims even after all federal claims have been disposed of in a case, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, __ U.S. __, 129 S.Ct. 1862, 1866 (2009), the Ninth Circuit has stated that "[w]hen . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Gini v. Las Vegas Metropolitan Police Dept.*, 40

F.3d 1041, 1046 (9th Cir. 1994) (quoting *Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989)).

The Court finds no compelling reason to retain supplemental jurisdiction over the state law claims in this case, particularly given that the appeal from the probate and tort proceedings remains pending before the Idaho Supreme Court. The Court, therefore, will exercise its discretion under 28 U.S.C. § 1367(c)(3) and decline to exercise supplemental jurisdiction in this case. Wisdom's state law claims will be dismissed without prejudice.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that**:

1. Plaintiff's claims under 42 U.S.C. § 1983 for alleged violations of due process and equal protection are DISMISSED for lack of subject matter jurisdiction.

2. Defendants' Motion for Summary Judgment (Dkt. 13) is GRANTED as to Plaintiff's claims against Defendants Michaelson and Hamilton, Michaelson & Hilty, LLP under 42 U.S.C. §§ 1981, 1985(2), 1985(3), and 1986.

3. Defendants' Motion for Summary Judgment (Dkt. 14) is GRANTED as to Plaintiff's claims against Defendants Mallo, McMurtrie, and Yost under 42 U.S.C. §§ 1981, 1985(2), 1985(3), and 1986.

4. Plaintiff's remaining state law claims are DISMISSED WITHOUT PREJUDICE.

5.    Plaintiff's Motion to Strike Expert Disclosure (Dkt. 42) is DENIED as

MOOT.



DATED: March 22, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge